[Cite as *Heck  v. Atakpu*, 2024-Ohio-2733.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MATHIAS H. HECK, JR. | : | |
| | : | |
| Appellee | : | C.A. No. 30009 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 03636 |
| | : | |
| PETER J. ATAKPU | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on July 19, 2024

. . . . . . . . . . .

PETER J. ATAKPU, Pro Se Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1}  Peter J. Atakpu appeals pro se from the trial court's entry of summary judgment in favor of the State on its complaint seeking to have him declared a vexatious litigator.

{¶ 2} In six assignments of error, Atakpu challenges the trial court's ruling declaring him a vexatious litigator under R.C. 2323.52. First, he contends res judicata precluded the State from obtaining a vexatious-litigator designation. Second, he claims the State's complaint was time barred. Third, he asserts that the State presented no evidence to support a vexatious-litigator designation. Fourth, he maintains that the trial court's decision was predicated on incorrect records and clerical error. Fifth, he argues that the trial court erred in overruling his motion to stay a decision on the State's motion for summary judgment. Sixth, he alleges that the trial court erred in failing to enforce discovery rules.

{¶ 3} For the reasons set forth below, we find Atakpu's arguments to be unpersuasive. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} After pleading guilty to murder and several other offenses in April 2000, Atakpu received an aggregate sentence of 34 years to life in prison. In July 2023, the State filed a complaint in the above-captioned case seeking to have him declared a vexatious litigator under R.C. 2323.52. The complaint alleged that Atakpu had filed approximately seven post-conviction appeals challenging his conviction and sentence as well as various motions and petitions for writs. According to the complaint, Atakpu's filings continued to advance the same unsuccessful arguments and legal theories.

{¶ 5} On August 31, 2023, the State moved for summary judgment on its complaint. In support, it cited docket entries reflecting numerous pro se, post-conviction filings by Atakpu in the 1999 criminal case that resulted in his 2000 murder conviction.

The State also cited filings in a dismissed 1999 case involving a felonious-assault charge as well as filings in post-conviction appeals and original actions.

{¶ 6} After receiving an extension of time to respond to the State's summary-judgment motion, Atakpu moved for a stay of the proceeding and sought an order directing the State to give him a paper copy of all the filings referenced by the State. Atakpu also separately moved for discovery, again asking the trial court to order the State to provide him with paper copies of the filings referenced in its motion. The State opposed both motions, pointing out that all of the documents were either pro se filings created by Atakpu or court orders that had been served on him. The State also noted that all of the documents were publicly available on the Montgomery County Clerk of Courts' website. Finally, the State asserted that the public records, which had been filed with the clerk's office, were not subject to discovery under the Civil Rules.

{¶ 7} On October 26, 2023, the trial court overruled Atakpu's motion for a stay and motion for additional discovery. It reasoned that "[d]efendant should already have in his possession all documents that he requests because they are either (1) notices, motions, or petitions that he himself filed as part of his criminal case, or as part of his numerous appeals from that conviction in that case; or (2) decisions and opinions issued by this Court or the Second District Court of Appeals that were previously served on Defendant."

{¶ 8} Thereafter, on November 3, 2023, Atakpu moved for another extension of time to respond to the State's summary-judgment motion. He also filed a November 8, 2023 motion again addressing his previously-denied request for paper copies of the filings cited in the State's motion. Atakpu then filed a November 29, 2023 "motion to correct the

record." He cited the clerk's online docket in his murder case and his dismissed felonious-assault case. He asked the trial court to take judicial notice of the online docket in both cases. He also identified 12 pro se filings by date and argued that they should have been filed only in his murder case rather than in both cases. Atakpu attributed the double filing to clerical error by the clerk's office rather than vexatious litigation. He raised this issue again in a November 30, 2023 "motion for emergency stay" of the State's summary-judgment motion.

{¶ 9} On December 12, 2023, the trial court entered summary judgment for the State, finding Atakpu to be a vexatious litigator. After reviewing the vexatious-litigator statute and governing case law, the trial court focused on a lengthy list of Atakpu's filings in his murder case. Based on those filings, the trial court reasoned "that there is no genuine issue of material fact and that Plaintiff is entitled to judgment as a matter of law."

## II. Analysis

{¶ 10} Atakpu's first assignment of error states:

**APPELLANT CONTENDS THAT THE TRIAL COURT ERRED AS A MATTER OF LAW IN DECLARING HIM A VEXATIOUS LITIGATOR CONTRARY TO R.C. 2969.25.**

{¶ 11} Under this assignment of error, Atakpu claims res judicata precluded the State from having him declared a vexatious litigator. He cites R.C. 2969.24(A), which authorizes the dismissal of an inmate's civil action or appeal against a government entity or employee on the basis of frivolousness or maliciousness. Atakpu asserts that the State never responded to any of his filings with a motion to dismiss under R.C. 2969.24(A).

Therefore, he claims res judicata precluded the State from filing a vexatious-litigator action under R.C. 2323.52.

{¶ 12} We find Atakpu's argument to be unpersuasive. Nothing in R.C. 2323.52 makes a motion to dismiss under R.C. 2969.24(A) a prerequisite to seeking to have an inmate declared a vexatious litigator under R.C. 2323.52. Nor does the absence of a motion under R.C. 2969.24(A) create a res-judicata bar to a vexatious-litigator action. The two statutes provide different remedies in different situations. The first assignment of error is overruled.

{¶ 13} Atakpu's second assignment of error states:

**APPELLEE'S ACTION WAS TIME-BARRED UNDER THE STATUTE OF LIMITATIONS SET FORTH IN R.C. 2323.52(B).**

{¶ 14} Atakpu contends R.C. 2323.52(B) obligated the State to file its vexatious-litigator action within one year after the dismissal of an original action he filed on May 12, 2022. He asserts that the State's failure to do so rendered the present action time barred.

{¶ 15} Atakpu's argument lacks merit. The statute he cites authorizes "a civil action in a court of common pleas with jurisdiction over [a] person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator." R.C. 2323.52(B). A vexatious-litigator action must be commenced "while the civil action or actions in which the habitual and persistent vexatious conduct occurred are still pending or within one year after the termination of the civil action or actions in which the habitual and persistent vexatious conduct occurred." *Id.*

{¶ 16} Atakpu contends the State did not file its vexatious-litigator complaint within

one year of the dismissal of a particular original action he filed. In response, the State notes that the dismissed original action was not the sole predicate for its complaint. The State also based its complaint on Atakpu's repeated motions, petitions, and other filings in his 1999 murder case. Although that criminal case is not "a civil action," we have recognized that "[c]onduct in a criminal case can also result in a vexatious litigator designation when said conduct is 'civil in nature.' " *State v. West*, 2d Dist. Greene No. 2001-CA-17, 2022-Ohio-2060, ¶ 18. Such conduct may include post-conviction motions and other filings by a defendant. *Id.* at ¶ 17-23.

{¶ 17} The most recent filing cited by the State in Atakpu's murder case was his March 2023 motion to appoint a shorthand reporter. The trial court overruled the motion in April 2023, and the State filed the present action three months later in July 2023. Therefore, the State satisfied the one-year time requirement in R.C. 2323.52(B). We note too that Atakpu waived any argument to the contrary by failing to raise the statute of limitations as a defense below. *Swaim v. Scott*, 2d Dist. Montgomery No. 25726, 2014-Ohio-419, ¶ 14-15; *Budz v. Somerfield*, 2d Dist. Montgomery No. 29550, 2023-Ohio-155, ¶ 30 ("It is well settled that arguments raised for the first time on appeal will not be considered by an appellate court. * * * This rule applies when reviewing decisions on motions for summary judgment."). Accordingly, the second assignment of error is overruled.

{¶ 18} Atakpu's third assignment of error states:

**TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PLAINTIFF'S SUMMARY JUDGMENT MOTION CONTRARY TO THE**

**PROVISIONS OF R.C. 2323.52.**

{¶ 19} Atakpu contends the trial court erred in entering summary judgment against him where the State failed to support its motion with any actual evidence such as affidavits and exhibits containing paper copies of his various filings. Absent hard copies of his filings, Atakpu reasons that the trial court improperly entered summary judgment based on mere allegations and conclusory statements. Despite suggesting that paper exhibits were required and, therefore, that the State was not permitted to refer to the clerk of courts' online docket, Atakpu also urges us to take judicial notice of that docket and to find that the clerk erroneously characterized three letters he filed in his murder case as motions.

{¶ 20} Upon review, we see nothing impermissible about the State's citing by date each of Atakpu's filings in his murder case without attaching a paper copy of those filings to its summary-judgment motion. We have recognized that a court may take judicial notice of opinions and records accessible by the internet. *Huber Heights Veterans Club, Inc. v. Grande Voiture d'Ohio La Societe des 40 Hommes et 8 Chevaux*, 2d Dist. Montgomery No. 29078, 2021-Ohio-2695, ¶ 33 (citing cases). In addressing the trial court's consideration of on-line court documents in *Huber Heights Veterans Club*, we reasoned in part: "Even assuming, for sake of argument, that the trial court considered additional filings from the common pleas court, municipal court, and bankruptcy court cases, we cannot conclude that the trial court abused its discretion in doing so. Grande Voiture and Voiture Nationale brought those cases to the trial court's attention, and the filings in those proceedings are readily available via the internet." *Id.* at ¶ 35.

{¶ 21} Here the State's summary-judgment motion brought Atakpu's murder case to the trial court's attention, citing it as the predicate for a vexatious-litigator determination. Atakpu's filings in that case were readily accessible to the trial court through its own online docket. From the trial court's perspective, its ability to review the challenged filings was the same regardless of whether the State attached physical copies of the filings to its motion. In finding that the State was not required to attach paper copies of Atakpu's filings to its motion, we note that Atakpu himself cited "www.clerk.co.montgomery.oh.us/pro" in his November 29, 2023 motion to correct the record and explicitly asked the trial court to take judicial notice of the online docket in both his murder case and his dismissed felonious-assault case.

{¶ 22} We are equally unpersuaded by Atakpu's assertion that the clerk of courts improperly characterized three letters as motions when filing them. In the first letter, which was filed on November 13, 2019, Atakpu sought a copy of the case summary in his murder case. The letter included the handwritten case number and a handwritten notation, "Motion for Records." It is not apparent to us that Atakpu did not make the notation. In the second letter, which was filed on October 28, 2019, Atakpu requested a copy of a motion for jail-time credit and a jail-time credit report. The clerk's office appears to have attached a cover sheet designating the letter as a motion for records. In our view, it was not unreasonable for the clerk's office to treat the foregoing letters requesting records as motions. In any event, the two letters were relatively insignificant in light of the large number of Atakpu's post-conviction filings in his murder case.

{¶ 23} The third letter Atakpu cites was filed on November 6, 2020 in his dismissed

felonious-assault case. Atakpu styled the letter as a public-records request and sought copies of various documents in that case. Once again, the clerk's office appears to have attached a cover sheet designating the letter as a motion for records. Less than a month after it was filed, the trial court struck the letter from the record. Regardless, that third letter had no bearing on the trial court's vexatious-litigator designation. In its summary-judgment decision, the trial court focused exclusively on Atakpu's filings in his murder case. It did not rely on any filings in the dismissed felonious-assault case.

{¶ 24} Finally, although Atakpu's arguments do not squarely address the issue, we conclude that his pro se filings in the murder case collectively supported the trial court's entry of summary judgment against him. The Revised Code defines a vexatious litigator in relevant part as a person "who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct[.]" R.C. 2323.52(A)(3). The phrase "vexatious conduct" includes: (1) conduct that "obviously serves merely to harass or maliciously injure another party"; (2) conduct that "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law; or (3) conduct that "is imposed solely for delay." R.C. 2323.52(A)(2).

{¶ 25} As noted above, conduct in a criminal case can support a vexatious-litigator designation where the conduct is "civil in nature." *West,* 2d Dist. Greene No. 2001-CA-17, 2022-Ohio-2060, at ¶ 18. In *West*, we upheld a vexatious-litigator designation where the defendant had made three pro se post-conviction filings in his criminal case that were civil in nature. In finding that the trial court properly had entered summary judgment for the State on the vexatious-litigator issue, we focused on the nature of the defendant's

conduct rather than the number of his actions. *Id.* at ¶ 29. We recognized that repeated efforts to raise a decided issue in a criminal case can constitute vexatious litigation. *Id.* We then found that the defendant had filed repeated unsuccessful motions and related appeals challenging the validity of his indictment and the trial court's subject-matter jurisdiction. *Id.* at ¶ 30. He also repeatedly had sought to obtain a grand-jury transcript despite the trial court continually rejecting his requests. *Id.* at ¶ 31.

{¶ 26} In the present case, Atakpu unsuccessfully sought leave to file a delayed direct appeal following his conviction in April 2000. He then filed a January 2003 plea-withdrawal motion, which the trial court overruled in October 2003. Thereafter, in October 2004, he filed a records request seeking portions of the record in his murder case. He claimed to be "in the process of appealing his conviction." He also cited Crim.R. 32.1 and implied that he planned to file a plea-withdraw motion. Atakpu made these representations despite the fact that this court already had denied him leave to file a delayed appeal and that the trial court already had overruled a plea-withdrawal motion. Atakpu also moved for a copy of transcripts at the State's expense. He specifically requested transcripts of all plea and pre-trial proceedings, all trial proceedings (including voir dire, opening statements, bench conferences, jury instructions, and closing arguments), and all post-trial and sentencing proceedings. Atakpu made this request despite the fact that his murder case had been disposed of by a guilty plea.

{¶ 27} In July 2005, Atakpu filed a post-conviction-relief petition and a separate motion for "reconsideration" of his sentence, citing Crim.R. 32.1, the plea-withdrawal provision. The trial court denied the petition for post-conviction relief without an

evidentiary hearing on the basis of untimeliness. It also overruled Atakpu's motion for reconsideration of his sentence.

{¶ 28} Atakpu then began filing requests for documents and records. On February 23, 2006, the trial court overruled one request for a copy of public records related to his criminal investigation and prosecution. It held that Atakpu had failed to show that the information was necessary to support a justiciable claim. At this point, Atakpu had exhausted his ability to pursue a direct appeal. He also unsuccessfully had sought to withdraw his guilty plea and unsuccessfully had sought post-conviction relief.

{¶ 29} Atakpu filed another pro se plea-withdrawal motion on August 12, 2009, along with motions for a hearing, to proceed in forma pauperis, and for appointment of counsel. While his new plea-withdrawal motion was pending, he also filed another records request and two motions for the production of evidence. On April 30, 2010, the trial court overruled the records request—which was related to the record of his criminal investigation and prosecution—on the basis that he again had failed to show that the information was necessary to support a justiciable claim. The trial court also overruled the two motions for the production of evidence, which related to records of incarceration pertaining to himself and two other inmates. The trial court found that Atakpu already possessed the information he sought. Thereafter, on September 22, 2010, the trial court overruled his second plea-withdrawal motion.

{¶ 30} In July 2010, Atakpu filed a motion asking the court to provide him with findings of fact and conclusions of law for "each motion he submits." He also asked the trial court to "clock in" and "clock out" by keeping a record of the time it spent dealing with

each of his motions. In September 2010, Atakpu filed another records request regarding the same two inmates who were the subject of his earlier request. The following month he moved for appointment of counsel to assist him with his "right to appeal" and for permission to proceed in forma pauperis. The trial court overruled the records request on July 18, 2011, again finding a failure to establish that the jail records were necessary to support what appeared to be a justiciable claim.

{¶ 31} In November 2011, Atakpu again moved for a copy of all transcripts at the State's expense, including non-existent transcripts of his "trial," voir dire, opening and closing statements, and jury instructions. In December 2011, Atakpu moved for reconsideration of the trial court's overruling of his most recent plea-withdrawal motion. He also sought resentencing on the basis that the trial court's judgment entry was not final. In February 2012, Atakpu moved to have the record supplemented with a letter he had written to the clerk's office regarding his records request for transcripts and other materials. In May 2012, he moved for permission to withdraw his resentencing motion. On June 5, 2012, Atakpu changed his mind and moved to strike his motion to withdraw his resentencing motion.

{¶ 32} In May 2012, the trial court overruled the motion regarding records and the letter to the clerk's office, finding no showing that the records were necessary to support a justiciable claim. On June 12, 2012, Atakpu moved for the appointment of counsel to assist him with an unspecified appeal. That same month, he asked the trial court to review his sentence to correct a post-release-control error. In July 2012, he sought to obtain his plea and sentencing transcripts, claiming they were necessary "to bring out the truth in

this matter." On August 1, 2012, Atakpu moved the trial court to strike three of his motions so he could refile them later. Two weeks later, he asked the trial court to dismiss all of his pending motions without prejudice. The trial court sustained that motion.

{¶ 33} Thereafter, in September 2016, Atakpu moved to withdraw his guilty plea "pre-sentence," requested a hearing, and sought appointment of counsel. In October 2016, he supplemented that motion, alleging "structural error" in the trial court. The trial court overruled Atakpu's motions in June 2017. Following two appeals to this court in 2017, Atakpu made another transcript request in May 2018, offering to purchase plea and sentencing transcripts himself. In February 2019, the trial court responded by agreeing to forward him a plea transcript at no expense even though it found him not entitled to one. With regard to the sentencing transcript, the trial court stated that it was unaware of one existing. It offered to make the stenographer's notes available for transcription.

{¶ 34} In July 2019, Atakpu made a records request in his criminal case directed toward the prosecutor's office. He requested a copy of the prosecutor's records-retention schedule and an address where records could be inspected. In October 2019, he made a request to the clerk's office seeking copies of a motion for jail-time credit and a jail-time credit report. In November 2019, he requested a copy of the case summary in his murder case. In January 2020, the trial court found that Atakpu had no right to the requested records because he had not shown that they were necessary to support a justiciable claim.

{¶ 35} In June 2022, Atakpu moved the trial court for an order preserving the stenographer's notes referenced above. In August 2022, the trial court advised him that

the notes, which were from the year 2000, had been misplaced and were unavailable. In March 2023, Atakpu made another records request regarding the stenographer's notes of his plea and sentencing hearings. He also moved the trial court to appoint an official shorthand reporter pursuant to R.C. 2301.18 and filed a separate "affidavit of evidence." In April 2023, the trial court overruled Atakpu's records request regarding the stenographer's notes. The trial court explained that it already had set forth a procedure for Atakpu to obtain transcription of the notes. It also observed that the stenographer's notes of the sentencing hearing could not be located and that Atakpu already had been advised of that fact.

{¶ 36} Having reviewed the record in Atakpu's murder case, we see no genuine issue of material fact as to whether he qualified as a vexatious litigator under R.C. 2323.52(A). After exhausting his direct-appeal right, filing an unsuccessful post-conviction-relief petition, and seeking leave to withdraw his guilty plea multiple times, Atakpu has continued for years to file documents in the trial court despite having no apparent viable avenue for obtaining any post-conviction relief. In addition to numerous motions and other assorted filings, he repeatedly has made the same or similar transcript requests. He also has made a number of public-records requests that the trial court consistently has denied based on his failure to show that the records are necessary to support a justiciable claim. *See State ex rel. Ware v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 23AP-18, 2024-Ohio-47, ¶ 35, citing *Ferrero v. Staats*, 5th Dist. No. 2018CA00016, 2018-Ohio-3235, ¶ 13 (observing that post-conviction public-records requests are civil in nature for purposes of the vexatious-litigator statute). Accordingly,

the third assignment of error is overruled.

{¶ 37} Atakpu's fourth assignment of error states:

**TRIAL COURT ABUSED ITS DISCRETION WHEN IT MADE A DECISION BASED UPON AN INCORRECT RECORD AND/OR CLERICAL ERROR.**

{¶ 38} Atakpu argues that clerical error resulted in certain documents being filed in both his dismissed felonious-assault case and his murder case when they should have been filed in only the murder case. He asserts that this error led to an incorrect record and created a false impression that he was a vexatious litigator. Once again, however, the trial court based its vexatious-litigator finding solely on filings in the murder case. Therefore, the fact that a few documents may have been misfiled in the felonious-assault case had no bearing on the trial court's summary-judgment decision. Accordingly, the fourth assignment of error is overruled.

{¶ 39} Atakpu's fifth assignment of error states:

**THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO STAY AND HOLD IN ADVANCE [SIC].**

{¶ 40} Atakpu challenges the trial court's denial of his motion to stay proceedings until the State provided him with paper copies of all allegedly vexatious prior filings. The trial court overruled his motion on the basis that he already should have the documents, which he had created and filed himself. Atakpu contends it was unreasonable for the trial court to expect him to have retained possession of these filings given his status as a prison inmate.

{¶ 41} Upon review, we see no abuse of discretion in the trial court's ruling. Even if we accept, arguendo, that Atakpu reasonably could not be expected to retain his own filings potentially dating back 20-plus years, all of the documents relied on by the State were available online. Despite his professed lack of internet access, Atakpu cited the clerk of courts' website in his November 29, 2023 motion to correct the record. In that motion, he referenced the docket sheets in his murder case and his dismissed felonious-assault case. He also referenced 12 specific filings by date and name. It appears, then, that Atakpu was capable of accessing—either directly or with assistance from a third-party—any filings that he no longer possessed. As noted above, Atakpu himself also asked the trial court to take judicial notice of the online docket in both his murder case and his dismissed felonious-assault case. Under these circumstances, we see no basis for reversal. The fifth assignment of error is overruled.

{¶ 42} Atakpu's sixth assignment of error states:

**TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ENFORCE DISCOVERY RULES PURSUANT TO CIV.R. 26(B) [AND] OHIO CIV.R. 34.**

{¶ 43} In his final assignment of error, Atakpu again addresses the State's failure to provide him with paper copies of his filings. He asserts: "It was imperative that Appellant have a copy of these filings in order to demonstrate that numerous cases were accidentally or deliberately misfiled by the clerk of courts and filed under a dismissed case number and/or recast by the clerk of courts into something other than what they were intended to be filed as (i.e. letters manually recast into motions)."

{¶ 44} The record belies Atakpu's claim that he could not make his arguments without a hard copy of the filings at issue. As set forth above, Atakpu cited the clerk of courts' website while arguing in the trial court about misfiled documents in his dismissed felonious-assault case. He then raised that argument on appeal along with an additional argument about the clerk's office improperly recasting letters into motions. Notwithstanding his lack of paper copies of his filings, Atakpu has litigated these issues, which we were able to resolve by viewing the filings online. Therefore, he has not demonstrated any prejudice arising from the State's failure to provide him with hard copies of the filings. The sixth assignment of error is overruled.

### III. Conclusion

{¶ 45} Having overruled Atakpu's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.